UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBIN HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-176-HBG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 16]. Now before the Court

is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 20 & 21] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 & 23]. Robin

Hicks ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the

ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons

that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.     **PROCEDURAL HISTORY**

On July 2, 2013, Plaintiff filed an application for supplemental security income benefits

pursuant to XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability

that began on November 1, 2013, the amended onset date. [Tr. 46-47, 187-92, 202]. After her

application was denied initially and upon reconsideration, Plaintiff requested a hearing before an

ALJ. [Tr. 139]. A hearing was held on November 6, 2015. [Tr. 42-95]. On January 27, 2016,

the ALJ found that Plaintiff was not disabled. [Tr. 23-37]. The Appeals Council denied Plaintiff's

request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 28, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since July 2, 2013, the alleged onset date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: obesity, carpal tunnel syndrome (CTS) of the right upper extremity; low back pain; irritable bowel syndrome (IBS); mood disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD); and chronic obstructive pulmonary disorder (COPD) (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes, and scaffolds; she can only frequently climb ramps and stairs, balance, stoop, kneel, and crouch; and only occasionally crawl. Handling with her bilateral upper extremities is limited to frequently. She cannot tolerate exposure to unprotected heights or open flames; cannot operate moving machinery or motor vehicles; and cannot tolerate exposure to environmental irritants, such as fumes, odors, dust chemical fumes, and gasses or work in poorly ventilated areas. The claimant is limited to simple, routine and repetitive tasks in an environment free of fast-paced production requirements; she can perform work involving only simply work-related decisions with few, if any workplace changes; and can have only occasional interaction with the public, coworkers and supervisors.

5.  The claimant is unable to perform any past relevant work. (20 CFR 416.965).

6.  The claimant was born on November 4, 1961 and was 51 years old, which is defined as closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since July 2, 2013, the date the application was filed (20 CFR 416.920(g)).

[Tr. 25-36].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It

is immaterial whether the record may also possess substantial evidence to support a different

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the

Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of

credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  *Boyes v.

Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months."

42 U.S.C. § 1382c(a)(3)(A).  A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

4

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ (1) failed to properly account for the functional limitations caused by Plaintiff's severe impairment of irritable bowel syndrome ("IBS"), and (2) erred in

rejecting the medical opinion of consultative examiner Ellen Denny, Ph.D. [Doc. 21 at 16-21]. The Court will address each alleged error in turn.

## A. Functional Limitations of Plaintiff's IBS

Plaintiff testified that her IBS symptoms prevented her from fulfilling the duties of her last job as a waitress. [Tr. 80-81]. She explained that when she was working, she would use the bathroom for an hour to an hour-and-a-half during an eight-hour workday. [Tr. 82]. Currently, the amount of time she spends in the bathroom varies but consists of at least 20 minutes several times a day. [Tr. 83-84].

In the RFC portion of the decision, the ALJ discussed Plaintiff's testimony and noted that medical records from 2014 reflect isolated complaints of diarrhea. [Tr. 31, 33]. Specifically, on February 9, 2014, Plaintiff presented to the emergency room with complaints of a headache lasting for five days and watery diarrhea for four days. [Tr. 474]. After being treated with an IV, Plaintiff was released that same day and assessed with diarrhea, vomiting, and nausea. [Tr. 4841]. Plaintiff's diarrhea was noted to be stable upon discharge, and she was instructed to follow-up with her primary care physician within three to five days. [Tr. 481-82]. Further complaints or treatment for IBS were not documented until Plaintiff presented to Tennova Digestive Disease Center a year-and-a-half later on July 31, 2015, with complaints of abdominal pain and IBS. [Tr. 34, 828-31]. As noted by the ALJ, Plaintiff exhibited epigastric tenderness and left lower quadrant tenderness and complained of frequent diarrhea. [Tr. 34, 829-30]. An esophagogastroduodenoscopy and colonoscopy were performed, revealing moderately severe chronic gastritis in the stomach and antrum and two small polyps in the descending colon and sigmoid colon. [Tr. 34, 832, 834]. The ALJ concluded that the record indicated that Plaintiff continued to have some problems with her IBS but did not assess any specific work-related

6

functional limitations caused by her impairment. [Tr. 34].

Plaintiff suggests that because the ALJ found Plaintiff's IBS severe at step two, the Plaintiff's RFC was necessarily impacted, and the ALJ's failure to include any limitations into the RFC that accommodated the impairment, such as bathroom breaks, working in close proximity to a bathroom, or being off-task due to frequent use of the bathroom, was error. [Doc. 21 at 17]. The Court finds that Plaintiff's contention demonstrates a misunderstanding of the sequential evaluation. The severity requirement of step two is a threshold determination that is a "*de minimis* hurdle" intended to "screen out totally meritless claims." *Nejat v. Commissioner*, 359 F. App'x 574, 576 (6th Cir. 2009). The RFC determination is a separate finding effecting steps four and five. "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation and internal quotation omitted); *see Corley v. Comm'r Soc. Sec.*, No. 98–3785, 1999 WL 970306, at * 1 (6th Cir. Oct.14, 1999) ("The ALJ did not err in finding that a severe impairment can exist without finding that a significant limitation and disability exist."). "Put another way, the existence of a severe impairment says nothing as to its limiting effects." *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014).

The claimant bears the burden to show that an impairment invokes work-related limitations. *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The Court finds that Plaintiff has not met her burden. Plaintiff cites to medical records that document complaints of diarrhea, abdominal pain, and cramps, as well as treatment by a digestive disease specialist, to support her argument that the ALJ should have incorporated limitations that accommodated her IBS. [Doc. 21 at 18] (citing Tr. 311, 315, 318, 319, 321, 323, 474-75, 541, 819, 828-38). All of

the treatment notes cited from Plaintiff's primary care physician [Tr. 311, 315, 318, 319, 323, 541] predate Plaintiff's amended onset date and merely document complaints of "abdominal pain" or "stomach pain" and an "assessment" of "IBS" without further detail. Moreover, the same treatment notes provide no indication that Plaintiff frequently used the bathroom or that she used the bathroom for long periods of time. Notably, when Plaintiff subsequently presented for a consultative examination with Jeffrey Summers, M.D., on September 23, 2013, Plaintiff did not relate a diagnosis of IBS or any associated symptoms. [Tr. 361-64]. The only mention of "frequent" diarrhea was when Plaintiff appeared at the emergency room in February 2014 with complaints of diarrhea for the past four days. [Tr. 474-75]. Despite this occurrence, Plaintiff never followed-up with her primary care physician as instructed upon discharge from the emergency room until two months later, at which time Plaintiff made no mention of diarrhea or any other IBS related symptom. [Tr. 536]. Plaintiff lastly cites to treatment notes from Tennova Digestive Disease Center. [Tr. 819-20, 828-38]. Plaintiff's single visit, however, likewise fails to demonstrate any disabling limitations caused by her IBS. [*See id.*].

In sum, the Court finds that the minimal complaints contained in the record concerning Plaintiff's IBS, in addition to the gaps in treatment for her alleged disabling impairment, fail to substantiate Plaintiff's allegation that her RFC should have included additional limitations. Accordingly, Plaintiff's allegation of error in this regard is not well-taken.

### B. Opinion of Ellen Denny, Ph.D.

Plaintiff presented for a consultative examination with Dr. Denny on September 10, 2013, with complaints of depression, low motivation and energy, hopelessness, social isolation, difficulty sleeping, irritability, memory problems, anxiety, frequent crying, low self-esteem, and a tendency to stay in bed. [Tr. 356]. Plaintiff reported that she takes her medication on her own but often

forgets, she does household chores, such as vacuums, cleans the bathrooms, sometimes makes the beds, helps care for her son's dog, takes the garbage out, wipes the counters, and sometimes cooks. [*Id.*]. She explained she does not go out or visit with friends, she stays home and watches TV, she often needs assistance to do most tasks but she can usually complete a task after some time. [*Id.*]. On mental status examination, Plaintiff displayed no unusual thoughts or evidence of psychotic thought process and demonstrated mild-to-moderate impairment in memory, moderate-to-severe impairment in attention and concentration, mild impairment in comprehension and judgment, and moderate impairment in abstract thinking. [Tr. 357].

Dr. Denny concluded that Plaintiff likely fell in the borderline range of intellectual functioning but that further testing would be necessary to confirm a diagnosis. [Tr. 358]. Plaintiff was assessed with post-traumatic stress disorder and major depressive disorder, recurrent, severe with psychotic features. [*Id.*]. As to work-related abilities caused by Plaintiff's cognitive and psychological limitations, Dr. Denny opined that Plaintiff displayed moderate impairment in understanding and remembering, moderate impairment in sustaining concentration and attention, mild impairment in interacting with others, and severe impairment in adapting to changes and requirements. [*Id.*].

In the disability decision, the ALJ assigned "limited weight" to Dr. Denny's opinion. [Tr. 35]. The ALJ noted that Plaintiff's diagnosis of severe depression with psychotic features was confusing given Dr. Denny's examination finding that Plaintiff demonstrated no signs of psychosis, was oriented and showed no unusual thoughts, delusions, or response to internal stimuli. [*Id.*]. Moreover, the ALJ found Plaintiff's severe limitation in adaption to change was contrary to Plaintiff's ability to care for herself, perform household chores, maintain custody and care for her young grandchildren, and maintain a routine even during periods of homelessness. [*Id.*].

9

The ALJ, instead, gave "significant weight" to the opinions of the nonexamining state agency medical sources, Rebecca Joslin, Ed.D., and Theren Womack, Ph.D., both of whom reviewed all available evidence, including Dr. Denny's opinion. [Tr. 35]. At the initial level on January 23, 2014, Dr. Joslin concluded that Plaintiff had moderate difficulties due to anxiety and depression, limiting her to simple and low level detailed instructions, no fast-paced, production-driven work, no interaction with the general public and only occasional interaction with coworkers and supervisors, work in which feedback is supportive, and infrequent changes in the workplace. [Tr. 105-07]. Dr. Womack concurred with Dr. Joslin's findings on August 27, 2014, at the reconsideration level. [Tr. 123-25]. The ALJ explained, however, that he was departing from the limitation of no interaction with the general public, finding Plaintiff was instead limited to occasional interaction with the public given her ability to interact appropriately with others and her assertion that she gets along with others most of the time. [Tr. 35].

Medical opinions from nontreating medical sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c)(1)-(6). *Gayheartv. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

Plaintiff argues that the ALJ disregarded the regulatory balancing factors and improperly deferred to the opinions of the nonexamining state agency medical sources over the opinion of Dr. Denny. [Doc. 21 at 18-19]. To the extent that Plaintiff suggests the ALJ was required to discuss each regulatory balancing factor in assessing Dr. Denny's opinion, the Court disagrees. Nothing

10

within 20 C.F.R. § 416.927(c) mandates that every factor be explicitly addressed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)]."); *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only consider the regulatory balancing factors in determining the appropriate weight a medical opinion deserves.

Here, the ALJ acknowledge that Dr. Denny was an examining source. [Tr. 32]; *see* 20 C.F.R. § 416.927(c)(1). Moreover, the ALJ considered the consistency and supportability of the opinion, *see* § 416.927(c)(3)-(4), in concluding that Dr. Denny's diagnosis of severe depression with psychotic features conflicted with her observation that Plaintiff demonstrated no signs of psychosis, as well as concluding that Plaintiff's daily living activities demonstrated a greater ability to adapt to change than found by Dr. Denny.

Plaintiff contends, however, that the ALJ "played doctor" by reaching a different conclusion as to Plaintiff's adaptability because Dr. Denny was aware of many of the same abilities and functions performed by Plaintiff that the ALJ relied upon to show that Plaintiff was not as limited in her ability to adapt to change. [Doc. 21 at 20]. The Court finds no merit in Plaintiff's contention. The "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). While the ALJ is prohibited from interpreting raw medical data, here, the ALJ relied on Plaintiff's own reported daily activities—a factor an ALJ may properly consider is discounting the nature and severity of a claimant's impairment. *See* 20 C.F.R. § 416.929(c)(3) (listing daily activities as one of several relevant factors that will be considered in assessing the nature or severity of a claimant's impairments and

related symptoms).

Plaintiff further argues her level of functioning found by the ALJ was taken out of context as Plaintiff also reported to Dr. Denny that she forgets to take her medication, rarely cooks, has trouble completing tasks, and does not socialize outside of her home. [Doc. 21 at 21] (citing Tr. 356). But the ALJ did not rely on the reported activities cited to Dr. Denny alone. The ALJ also considered Plaintiff's activities as described in her Function Report [Tr. 224-31], Plaintiff's testimony, and the opinions of the nonexamining state agency medical sources in declining to give greater weight to Dr. Denny's opinion. [Tr. 31-32, 35]. The Court finds that the ALJ's conclusion that Plaintiff has a greater ability to adapt to change than opined by Dr. Denny was within the zone of choices offered by the evidence. *See Buxton*, 246 F.3d at 773.

Plaintiff also maintains that the ALJ provided no explanation for deferring to the opinions of the nonexamining state agency medical sources over the opinion of Dr. Denny. [Doc. 21 at 19]. Importantly, the Court notes that while Dr. Denny's opinion received limited weight from the ALJ, the only limitation that appears to have been expressly rejected was Dr. Denny's finding that Plaintiff was severely limited in her ability to adapt to change. [Tr. 35]. To be sure, Plaintiff's mental RFC in all other respects—limitation to simple, routine and repetitive tasks in an environment free of fast-paced production requirements, simple work-related decision, and only occasional interaction with others—is consistent with Dr. Denny's finding that Plaintiff is moderately limited in her ability to understand, remember, concentrate, and pay attention and mildly limited in her ability to interact with others. [*Compare* Tr. 30 *with* Tr. 355]; *see Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (finding a "limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'"); *Ziggas v. Colvin*, No. 1:13-cv-87,

2014 WL 1814019, at *6 (S.D. Ohio May 6, 2014) ("[C]ourts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)). While the ALJ did not expressly state why the opinions of the nonexamining state agency medical sources received significant weight, it is evident from the ALJ's decision as a whole that their opinions were found to be more consistent and supported by the record, including Plaintiff's daily living activities, the minimal mental health treatment Plaintiff received, and the limitations assessed by Dr. Denny with the exception of Plaintiff's limitation in adaption. [Tr. 31-35].

Accordingly, the Court finds that substantial evidence supports the weight assigned to the medical opinions of record, and Plaintiff's arguments to the contrary are not well-taken.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge